## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## Case No.:  17-CR-107 (16) DWF/TNL

United States of America,

       Plaintiff,

v.

Thoucharin Ruttanamongkongul (16),

       Defendant.

**MOTION TO RECONSIDER
DETENTION ORDER**

The defendant, Thoucharin Ruttanamongkongul, through her undersigned attorney, respectfully moves the Court pursuant to 18 U.S.C. § 3145(b) to reconsider the Detention Order of United States Magistrate Jeffrey Cole, filed in the Northern District of Illinois, Eastern Division, on or about May 30, 2017, and to release her upon conditions that would reasonably assure her future appearances in court.

In support of defendant's motion we aver:

1.     Ms. Ruttanamongkongul is one of twenty or so defendants who the government has indicted in a widespread prostitution and money laundering conspiracy. Many of these individuals, including Ms. Ruttanamongkongul, reside in states other than Minnesota. They were arrested, brought to court in their respective states, ordered detained and transported to Minnesota. We believe this Court has entertained several previously filed motions to review detention orders within this particular alleged conspiracy and has ruled favorably for some defendants, allowing them to go home while complying with strict conditions of pretrial release.

2.      Ms. Ruttanamongkongul was arrested on May 24, 2017.  On May 30, 2017 she appeared for a Detention Hearing in the Northern District of Illinois and ordered detained. She has been in custody since May 24.  She is currently incarcerated at the Scott County Jail in Shakopee.

3.      Ms. Ruttanamongkongul is 34 years old. She is a Thai national who has been living in this country for 12 years.  Her parents are deceased. She is an only child.  She has virtually no ties to Thailand.

4.      At the time of her arrest, she was living in her apartment in Chicago, Illinois.  She was gainfully employed. She has many friends in Chicago, including her boyfriend, Toby Sunsanguan.  She has co-owned and worked at Fugu Tei Sushi Bar, located at 1925 West Foster Avenue in Chicago, for more than a year.

5.      This case has been designated "complex." The discovery is beyond voluminous. A trial date has been tentatively set for May 2018. Given the number of defendants and complexities of the case, this date may be ambitious.

6.      The government has characterized Ms. Ruttanamongkongul as a "house boss" but in the initial 59 reports ("Hot Docs") disclosed to her, she was mentioned in only one report. That report simply documents a ruse law enforcement perpetuated to get Ms. Ruttanamongkongul to meet with them to confirm her address, phone number and place of employment. In that endeavor, law enforcement was successful. They met her at her restaurant, and confirmed her address and telephone number. They then thanked her and left. They later learned, consistent with what she told them, that she registered Fugu Tei Sushi as an Active Corporation in the State of Illinois.

7.     At the May 30, 2017 detention hearing, the Magistrate voiced concerns about whether Ms. Ruttanamongkongul would attend the proceedings in Minnesota, and therefore detained her. The Magistrate stated:

> "So I'm going to order her detained in the custody of the marshals. They'll take her back to Minnesota. And she is free to renew any motion that she has before the district court there. So I think if bond is to be granted, it should be granted in Minnesota. . ."

Transcript of Detention Hearing, p. 9 (attached).

8.     As this Court is aware, local county jails are not meant to house defendants beyond eight months. Continued detention of a presumed innocent individual would keep Ms. Ruttanamongkongul in custody for more than a year, if not longer. Her prior record consists of a DUI conviction in 2009. She is not a danger to the public. She has a restaurant with significant employment ties and a place to live in Chicago. With appropriate conditions, she is not a flight risk.

Therefore, Defendant respectfully requests this Court to conduct a hearing and to release Ms. Ruttanamongkongul pursuant to 18 U.S.C. § 3142(c) subject to the following combination of conditions that will reasonably assure her future appearances before this Court:

- Surrender of passport and pledge not to seek new travel documents.

- Waiver of right to contest extradition.

- Reside at her boyfriend's home, located at 2028 West Montrose Avenue, Apt. #2A, in Chicago, Illinois 60618, with electronic and GPS monitoring.\

- Heightened reporting to Pretrial Services as directed.

- A signature bond.

- Any other conditions this Court deems to be just and proper.

3

Respectfully submitted,

MESHBESHER & SPENCE, LTD.

Dated: September 5, 2017

By: */s/ Daniel Guerrero*
    Daniel Guerrero, #206040
    1616 Park Avenue
    Minneapolis, MN  55404
    612-339-9121 (ph)
    612-339-9188 (fax)

ATTORNEYS FOR DEFENDANT

1   **TRANSCRIBED FROM DIGITAL RECORDING**

2                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                        EASTERN DIVISION

4   UNITED STATES OF AMERICA,              )
                                           )
5                Plaintiff,                )
                                           )
6                vs.                       )   No. 17 CR 343
                                           )
7   THOUCHARIN RUTTANAMONGKONGUL, also     )
    known as NOIY,                         )   Chicago, Illinois
8                                          )   May 30, 2017
                 Defendant.                )   9:56 A.M.
9
            TRANSCRIPT OF PROCEEDINGS – Detention Hearing
10     BEFORE THE HONORABLE SUSAN E. COX, Magistrate Judge

11  APPEARANCES:

12  For the Government:       HON. JOEL R. LEVIN
                             219 South Dearborn Street
13                           Chicago, Illinois  60604
                             BY:  MR. AARON RICHARD BOND
14
    For the Defendant:       DUANE MORRIS LLP
15                           190 South LaSalle Street
                             Suite 3700
16                           Chicago, Illinois  60603
                             BY:  MR. CHRISTOPHER T. GROHMAN
17

18                   PAMELA S. WARREN, CSR, RPR
                        Official Court Reporter
19                   219 South Dearborn Street
                            Room 2342
20                   Chicago, Illinois   60604
                          (312) 408-5100
21
    **NOTE:  Please notify of correct speaker identification.**
22  **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
    **UNINTELLIGIBLE.**
23

24

25

1          (Proceedings held in open court:)

2          THE CLERK:  17 CR 343, United States versus Thoucharin

3    Ruttanamongkongul.

4          MR. BOND:  Good morning, your Honor.  Aaron Bond on

5    behalf of the United States.

6          THE COURT:  Good morning.

7          MR. GROHMAN:  Good morning, your Honor.  Christopher

8    Grohman on behalf of the defendant, who is present.

9          THE COURT:  And we're here for?

10          MR. BOND:  Here for detention hearing, your Honor.

11          THE COURT:  Okay.  Go ahead.

12          MR. BOND:  Your Honor, we'll proceed by way of

13    proffer.

14          This -- your Honor is familiar with the facts of this

15    case from the other defendants.  But, just for the record on

16    this defendant, again, she's specifically charged with four

17    counts out of Minnesota:  conspiracy to commit sex trafficking,

18    conspiracy to transport for prostitution, conspiracy to engage

19    in money laundering, and conspiracy to use a communication

20    facility to promote prostitution.

21          Under 3142(e)(3)(D) this is a rebuttable presumption

22    detention due to the fact that the maximum penalty is over 20

23    years for one of the counts in this case, specifically the

24    count alleging conspiracy to commit sex trafficking.

25          There is also a presumption, we believe, of detention

1    for both flight and risk of danger to the community based on

2    the nature and circumstances of the offense, as well as the

3    weight of the evidence, your Honor.

4            Specifically the conspiracy that the defendant is

5    alleged to be a part of is an international criminal

6    organization with overseas ties, specifically to Thailand, your

7    Honor, engaging in a trafficking of hundreds of women through

8    force, fraud, and coercion, including threats of violence and

9    actual violence to those female victims.

10           It is also a criminal organization, Judge, that

11   engages in widespread visa fraud, marriage fraud, and other

12   various means to evade immigration laws.  This defendant, in

13   particular -- actually, before I move on to that, this

14   defendant, in particular, regarding her immigration status,

15   Judge.

16           I would also note that regarding the money that is

17   laundered through this organization as part of the conspiracy,

18   there are individuals who set up bank accounts for

19   these -- this conspiracy who use the money -- the ill-gotten

20   money of the prostituting to essentially use the bank accounts

21   to further the activity of the conspiracy, engaging in activity

22   such as smurfing, where the money is deposited in smaller

23   amounts so as to not alert the authorities and reporting

24   requirements, Judge.

25           This defendant, in particular, again, as noted, she is

1  not in the country legally.  She has no current authorization
2  to live or work in the United States.  I would also note that
3  from her A file, which is her alien file, it notes that she was
4  attempting to derive legal immigration status as a student and
5  exchange visitor, and claimed that she was in the country as an
6  au pair.
7          Clearly we believe, the government believes, that it
8  is misleading information.  And, again, that was certainly not
9  brought to the attention of pretrial.  She indicated she's here
10 -- I think she indicated she worked at a restaurant possibly.
11         With regard to her specific role in the conspiracy,
12 Judge, she served as a house boss.  And as a house boss, she
13 was one of the higher ups in the conspiracy.  Her job was to
14 oversee the day-to-day operations of a particular brothel or
15 house of prostitution.
16         At that location she would be in charge of
17 advertising, trafficking victims for commercial sex acts, as
18 well as procuring and maintaining those houses of prostitution,
19 and scheduling sex buyers, and ensuring that a portion of the
20 cash that was provided by these jobs or these sex buyers that
21 was given to the victims was in fact routed back to the bosses
22 or traffickers back in Thailand to pay down what is known as
23 bondage debts.  The bondage debts were owed by the victims in
24 this case, the prostitutes, who were in -- anywhere from ranges
25 of 40 to 60 thousand dollar bondage debts.  Sometimes higher.

1   And those bondage debts would also, while they were -- wouldn't

2   necessarily be paid down gradually, they were also indications

3   that these bondage debts were added on to so that these women

4   were essentially living a life of indefinite indentured

5   servitude.

6         So based on all that, your Honor, again, also noting

7   the pretrial report that recommends detention in this case, we

8   would be asking for detention in this case.

9         MR. GROHMAN:  Thank you, your Honor.

10        As your Honor knows, the rebuttable presumption only

11  goes to whether or not the defendant is a risk of danger to the

12  community.  And as noted in the pretrial services report for

13  the almost 12 years that she's been here, her only notable

14  arrest is a DUI from 2009.

15        Mr. Bond's presentation focused largely on the

16  evidence that may be presented in Minnesota, and it is just

17  that.  Right now we just have a probable cause determination by

18  a grand jury.

19        The defendant strongly denies those allegations.  And

20  in a case like this where there is a defendant with very

21  limited, limited criminal history, the Court should seriously

22  consider giving her a bond.

23        The only reason I can think of not to give somebody

24  with only one arrest in their history a bond in this case is

25  the fact that she's not here legally.

1         Mr. Bond spoke about her A file.  That hasn't been

2    turned over in any discovery.  I don't have any access to that.

3    I don't think the Court should rely on that if the defense is

4    not privy to that information.

5         She has four family members here -- or sorry.  Excuse

6    me.  Four friends here today who she has known for 11 years.

7    One of them is a U.S. citizen.  The other are Green Card

8    holders who live in Bloomfield.  They're willing to act as

9    third-party custodians.

10        I know she has virtually no ties to Thailand.  She's

11   been here for 12 years.  Her parents are dead.  Her husband,

12   who was here with her, is dead.  She has no money in her bank

13   account.  She has virtually no criminal history.

14        Incarcerating her now through the end of these

15   proceedings would only serve to punish her for attempting to

16   immigrate to the United States.

17        THE COURT:  Well, I don't agree with the last part of

18   what you said at all.  I would not punish her for -- because

19   she wants to come here and be here legal.  That's not what's

20   been asked for, and it is clearly not what the proof is.

21        But, anyway, you have -- you can have the last word.

22        MR. BOND:  Sure, Judge.

23        We would just again note that there is no indication

24   as to whether any of the individuals in court would be remotely

25   proper to serve as any kind of custodian.

1          THE COURT:  Well, assuming they were, let's just

2   assume for the sake of argument that they would otherwise

3   satisfy the government and me.

4          MR. BOND:  Yes, sir.  In that regards, again, I would

5   note with regards to the danger to the community, this is --

6   these allegations in this case -- and, again, there are

7   allegations, but the Court can take note of them.  It involves

8   the trafficking of women.

9          This defendant, in particular, was not a low-level

10  member of that conspiracy.  She in fact was alleged to have run

11  specific houses, specific brothels, and to be in charge of the

12  brothels and be in charge of those houses where women were kept

13  as essentially indentured servitude, performing sex acts for

14  random --

15         THE COURT:  Well, but, again, that -- I think, as

16  counsel said, that really goes more to the sufficiency of the

17  evidence.  The charges are serious, and I think, at least there

18  is an indictment, so one assumes the evidence is relatively

19  strong.

20         I mean, it is certainly stronger than in a complaint

21  situation because a grand jury has effectively said there is

22  probable cause to believe she did whatever is charged.  So I

23  don't think that we need to get into that.  I think that that

24  aspect of the argument is right.

25         And your concern is that she's a serious risk of

1  flight and a danger to the community, right?

2       MR. BOND:  Yes.  Especially with risk of flight,

3  Judge.  I don't think there are any verifiable ties to the

4  community that we can see.  We think the risk of flight is

5  extremely great, and I don't -- I think the potential for not

6  showing up to court is great if she is released, Judge.  That's

7  the government's position.

8       THE COURT:  Well, we can go back and forth on this,

9  and people can disagree.  I think the government has proved, by

10 at least a preponderance of the evidence, that she is a serious

11 risk of flight, and that there is no condition or set of

12 conditions that will assure her appearance at trial.  There is

13 every motive in the world to flee.  Every motive.  And indeed,

14 so far as one can tell, every opportunity to flee.

15      She leaves the courtroom today, supposedly in the

16 custody of her -- a friend, not even a relative, with, I take

17 it, no bond, and what assures that she will go to Minnesota?  I

18 mean, absolutely nothing.

19      As I have said repeatedly, all bond decisions, all of

20 them, are exercises in prophecy.  I can't tell the future any

21 more than anybody else here can.  But you can predict,

22 hopefully, that something will come to pass or not.  And I did

23 not have sufficient assurance that she will attend the

24 proceedings in Minnesota.

25      Whether or not she's a danger to the community, I'm

1    not so sure.  But I have no doubt at all that she is a serious

2    risk of flight, and that no condition or set of conditions will

3    assure her attendance at the proceedings in Minnesota.

4          So I'm going to order her detained in the custody of

5    the marshals.  They'll take her back to Minnesota.  And she is

6    free to renew any motion that she has before the district court

7    there.  So I think if bond is to be granted, it should be

8    granted in Minnesota, but not -- not -- there is not a

9    sufficient showing here.

10         So that's the order.

11         MR. BOND:  Thank you, your Honor.

12         MR. GROHMAN:  Thank you.

13         THE COURT:  All right.

14    (Which concluded the proceedings.)

15                        CERTIFICATE

16         I certify that the foregoing is a correct transcript

17    from the digital recording of proceedings in the above-entitled

18    matter to the best of my ability, given the limitation of using

19    a digital-recording system.

20

21

22    */s/ Pamela S. Warren*                 August 28, 2017
      Official Court Reporter                      Date
23    United States District Court
      Northern District of Illinois
24    Eastern Division

25