# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-107(16) (DWF/TNL) |
| Plaintiff, | |
| v. | **ORDER AND MEMORANDUM** |
| Thoucharin Ruttanamongkongul, | |
| Defendant. | |

Laura M. Provinzino and Melinda A. Williams, Assistant United States Attorneys, United States Attorney's Office, counsel for Plaintiff.

Daniel C. Guerrero, Esq., Meshbesher & Spence, Ltd., counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Thoucharin Ruttanamongkongul's Motion for Judgment of Acquittal on Count 1 of the Third Superseding Indictment (Doc. No. 1008). For the reasons set forth below, the Court denies Defendant's motion.

## MEMORANDUM

### I. Background

The Third Superseding Indictment in the above-entitled matter charged Defendant Thoucharin Ruttanamongkongul's ("Ruttanamongkongul") with Conspiracy to Commit Sex Trafficking (Count 1), Conspiracy to Commit Transportation to Engage in Prostitution (Count 3), Conspiracy to Engage in Money Laundering (Count 4), and

Conspiracy to Use a Communication Facility to Promote Prostitution (Count 5). (*See* Doc. No. 830.) All four counts proceeded to trial by jury. On December 12, 2018, the jury returned its verdict, finding Ruttanamongkongul guilty of all counts. (Doc. No. 1000.)

## II. Defendant's Motion

Ruttanamongkongul now moves, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, for judgment of acquittal on Count 1 of the Third Superseding Indictment. (Doc. No. 1009 ("Memo.") at 1.) Count 1 charged that:

> From in or about January 2009 through in or about May 2017, in the State and District of Minnesota and elsewhere, [Ruttanamongkongul] did, in and affecting interstate and foreign commerce, knowingly conspire with one another and others, known and unknown to the grand jury, to recruit, entice, harbor, transport, provide, obtain, and maintain, by any means, a person, and benefited, financially and by receiving anything of value, from participation in a venture which engaged in the previously described acts, and knowing that means of force, threats of force, fraud, coercion, and any combination of such means would be used to cause the person to engage in a commercial sex act, and attempted to do so, in violation of Title 18, United States Code, Sections 1591(a), 1591(b)(1), and 194(a).

(Doc. No. 830 ¶ 7). Ruttanamongkongul argues that the Court must vacate the jury's verdict on Count 1 and enter a judgment of acquittal because there was insufficient evidence to convict her of conspiracy to commit sex trafficking. (*Id.*) The Government opposes Ruttanamongkongul's motion. (Doc. No. 1018.)

For the reasons discussed below, the Court finds that sufficient evidence exists to support the verdict reached by the jury as to Count 1 of the Third Superseding Indictment. Therefore, the Court denies Ruttanamongkongul's Rule 29(c) motion for judgment of acquittal.

2

Under Federal Rule of Criminal Procedure 29, a district court must enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a), (c). "The standard for determining whether evidence is insufficient is very strict, requiring acquittal only where there is 'no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *U.S. v. Munoz*, No. 11B167, 2012 WL 2021143 (D. Minn. July 25, 2012) (citing *U.S. v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999)). The Court makes this determination with very limited latitude. *U.S. v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002). Even if the evidence rationally supported two conflicting hypotheses, the court will not disturb the conviction. *Ortega v. U.S.*, 270 F.3d 540, 544 (8th Cir. 2001). The Court does not "weigh the evidence or assess the credibility of the witnesses." *Id.* The Court views the "evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *U.S. v. Lewis*, 895 F.3d 1004, 1008 (8th Cir. 2018) (citation and internal quotations omitted). Reversal is warranted only if "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Stacks,* 821 F.3d 1038, 1042 (8th Cir. 2016) (citing *U.S. v. Sanchez*, 789 F.3d 827, 834 (8th Cir. 2015)).

Ruttanamongkongul argues that the evidence admitted at trial does not permit any inference that she voluntarily and intentionally joined an agreement to use force, threats of force, fraud, or coercion to compel a person to engage in a commercial sex act.

(Memo. at 1.) At most, Ruttanamongkongul contends, the evidence showed only that she was engaged in prostitution. (*Id.* at 6.)

Viewing this evidence in the light most favorable to the verdict, the Court finds that there was adequate evidence to support the jury's conviction of Ruttanamongkongul on Count 1 as charged in the Third Superseding Indictment.

To convict Ruttanamongkongul of Count 1, the Court instructed the jury that the Government was required to prove the following four elements beyond a reasonable doubt: (1) two or more people reached an agreement to commit the crime of sex trafficking by force, threats of force, fraud, or coercion, or any combination of such means [the elements of which were described in a later instruction]; (2) the defendant voluntarily and intentionally joined the agreement, either at the time it was first reached or at some later time while it was still in effect; (3) at the time the defendant joined the agreement, he or she knew the purpose of the agreement; and (4) while the agreement was in effect, one or more persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out the agreement. (Doc. No. 991 ("Jury Instructions") at 21, 22.)

The Court instructed that the agreement may last a long time or a short time, and that the members of the agreement did not have to join at the same time. (*Id.* at 23.) The Court further instructed that a person may be a member of the agreement even if the person does not know all of the other members of the agreement, or if the person agreed to play only a minor part in the agreement. (*Id.*) The Court also explained that a person does not have to personally commit an act in furtherance of the agreement, know about it,

4

or witness it. (*Id.* at 29.) Because it is seldom, if ever, possible to determine directly what was in the defendant's mind, the Court instructed that the defendant's knowledge of the agreement and its purpose could be proved like anything else, from reasonable conclusions drawn from the evidence. (*Id*.) The Court also instructed that knowledge could be inferred if a defendant deliberately closed their eyes to what would otherwise have been obvious to them and explained that a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing, and who can almost be said to have actually known the critical facts. (*Id.* at 26-27.)

The Government presented testimony from other members of the conspiracy that Ruttanamongkongul ran several houses of prostitution (Doc. No. 982 ("Transcript 1") at 38; Doc. No. 1036 at 108-109), that several women working in those houses were under debt to members of the trafficking organization (Transcript 1 at 39, 74, 173-174), and that she worked closely and was friends with the individuals who owned the debt. (*Id.* at 38, 43-44.) The Government also presented evidence that corroborated the testimony including e-mails to Ruttanamongkongul with escort-style photos of identified victims of the organization (Doc. No. 995, Exs. 255-256), passport photos of victims (*id.* at Exs. 254, 258), and requests for posting commercial sex advertisements (*id.* at Ex. 259). It also presented evidence of leases for houses of prostitution that Ruttanamongkongul executed, or were executed on her behalf. (*Id.* at Exs. 825, 829, 831.) Additional evidence included ads for commercial sex that Ruttanamongkongul posted (*id.* at Ex. 1240), and a financial summary chart with unreported cash deposits consistent with the money laundering operations of the trafficking organization (*id.* at 926).

The Government also presented evidence about the logistics of the trafficking organization Ruttanamongkongul was alleged to be part of: This included testimony that: (1) victims were brought to the United States pursuant to significant debt (Transcript 1 at 6, 10; Doc. No. 958 ("Transcript 2") at 22, 24); (2) the victims had to engage in commercial sex acts until they paid off the debt (Transcript 1 at 6; Transcript 2 at 65, 73;); (3) the individuals who ran the houses of prostitution collaborated with one another and with traffickers to make a profit (Transcript 1 at 15-25;Transcript 2 at 58, 75); and (4) the organization dealt nearly entirely in cash (Transcript 1 at 57.)

Ruttanamongkongul argues that "at best" this evidence shows only that she engaged in prostitution. (Memo. at 6.) She contends that there is nothing to suggest that she held debt, or that she sought to isolate, manipulate, or threaten women in Thailand or the United States, or that she used force, threats of force, fraud, or coercion in any way whatsoever, or that she was aware anyone else did. (*Id.* at 6.)

The Court disagrees. The Government admitted sufficient evidence for a reasonable jury to conclude that Ruttanamongkongul participated in a conspiracy to commit sex trafficking by force, threats of force, fraud, or coercion. Even if the evidence rationally supported two conflicting hypotheses, the court will not disturb the conviction. *Ortega*, 270 F.3d at 544. Here, there was sufficient evidence for a reasonable jury to conclude that Ruttanamongkongul knew that the women working in her houses of prostitution were under debt held by individuals who Ruttanamongkongul collaborated with, and that Ruttanamongkongul benefited financially while knowing that, or with deliberate blindness to, the women working in her houses were caused to engage in

commercial sex acts through means of force, threats of force, fraud, or coercion, or any combination of such means to pay off the debt.  The jury was properly instructed that it did not matter whether Ruttanamongkongul personally used means of force, threats of force, fraud, or coercion.  (Jury Instructions at 29.)  The jury was also properly instructed that it did not matter whether or not Ruttanamongkongul played a minor role.  (*Id.* at 23.)  Therefore, even if "at best" the evidence showed that Ruttanamongkongul operated houses of prostitution in furtherance of the conspiracy, there was sufficient evidence to convict her of Count 1.

For the reasons stated, the Court respectfully denies Ruttanamongkongul's Motion for Judgment of Acquittal with respect to Count 1 of the Third Superseding Indictment.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Thoucharin Ruttanamongkongul's Motion for Judgment of Acquittal as to Count 1 of the Third Superseding Indictment (Doc. No. [1008]) is **DENIED**.

Dated:  February 20, 2019              s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge