## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 17-107(16) (DWF/TNL)

             Plaintiff,

v.                                                 **MEMORANDUM**
                                                   **OPINION AND ORDER**

Thoucharin Ruttanamongkongul,

             Defendant.

---

Thoucharin Ruttanamongkongul Defendant, *Pro Se.*

Craig R. Baune, Laura Provinzino, and Melinda A. Williams, United States Attorney's Office, counsel for the Government.

---

## INTRODUCTION

This matter is before the Court on Defendant Thoucharin Ruttanamongkongul's ("Ruttanamongkongul") *pro se* Motion for Compassionate Release in light of the COVID-19 pandemic.[1]  (Doc. No. 2199 ("Motion").)  The United States of America (the

---

[1]    Ruttanamongkongul also attempts to challenge the conditions of her confinement (Motion at 7-17), and to relitigate the merits of her sentence and conviction (*id.* at 21-37). To the extent Ruttanamongkongul challenges the conditions of her confinement, the Court notes that these arguments are properly raised in a civil filing in the district where Ruttanamongkongul is confined—the Northern District of Alabama.  Because Ruttanamongkongul is not confined in Minnesota, this Court lacks jurisdiction over such claims.  The Court similarly lacks jurisdiction to consider Ruttanamongkongul's arguments regarding the merits of her sentence because the matter is currently on appeal before the U.S. Court of Appeals for the Eighth Circuit.

"Government") opposes Ruttanamongkongul's Motion.  (Doc. No. 2226.)  For the reasons discussed below, the Court respectfully denies Ruttanamongkongul's Motion.[2]

## BACKGROUND

The Third Superseding Indictment in the above-entitled matter charged Ruttanamongkongul with Conspiracy to Commit Sex Trafficking (Count 1), Conspiracy to Commit Transportation to Engage in Prostitution (Count 3), Conspiracy to Engage in Money Laundering (Count 4), and Conspiracy to Use a Communication Facility to Promote Prostitution (Count 5).  (*See* Doc. No. 830.)  All four counts proceeded to trial by jury.  On December 12, 2018, the jury returned its verdict, finding Ruttanamongkongul guilty of all counts.  (Doc. No. 1000.)  On October 8, 2019, this Court sentenced her to 142 months' imprisonment to be followed by a five-year term of supervised release.[3]  (*See* Doc. Nos. 1403, 1464, 1466.)  Ruttanamongkongul appealed her sentence and conviction to the U.S. Court of Appeals for the Eighth Circuit on October 22, 2019.[4]  (Doc. No. 1435.)

---

[2]     The Court also received and considered Ruttanamongkongul's exhibits to her Motion (Doc. Nos. 2199-1—2199-7), and her response to the Government's opposition (Doc. No. 2232 ("Reply") with exhibits (Doc. No. 2233 ("Pics. and Letters of Support")).

[3]     The Court imposed a below-guidelines sentence that reflected the seriousness of Ruttanamongkongul's offense, afforded adequate deterrence, avoided unwarranted sentencing disparities, and provided restitution to the victims.   (Doc. No. 1466 at 3.)  The Court also took into account the cultural expectations of women in Thailand and Ruttanamongkongul's diminished involvement with the sex-trafficking organization prior to her arrest.  (*Id.*)

[4]     Ruttanamongkongul's appeal before the Eighth Circuit was taken under advisement in October 2021.

Ruttanamongkongul is currently incarcerated at Aliceville FCI in Aliceville, Alabama with an anticipated release date of June 24, 2027.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited March 21, 2022).  Aliceville FCI is a Level 3 institutional operational level, meaning the facility has made intense modifications to mitigate the spread of COVID-19.  Federal Bureau of Prisons, BOP COVID-19 Operational Levels, *https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp* (last visited March 21, 2022).  Aliceville FCI reports 1 active COVID-19 case among its inmates and staff, and 319 inmates and 22 staff who have recovered from the virus.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 21, 2022).  To date, the Bureau of Prisons ("BOP") has performed 1292 tests for COVID-19 at Aliceville FCI with 351 of them positive for the virus.  *Id.*  Moreover, the BOP has fully inoculated 181 staff and 1329 inmates against COVID-19 at Aliceville FCI.[5]  *Id.*

Ruttanamongkongul, who is 38 years old, now moves for compassionate release on the grounds that she is unable to maintain social distancing at Aliceville FCI and that she is at increased risk for infection from COVID-19 in a prison setting.[6]  (Motion at 6-8;

---

[5]     The inmate population at Aliceville FCI is 1,247.  *See* Federal Bureau of Prisons, FCI Aliceville, *https://www.bop.gov/locations/institutions/ali/* (last visited March 21, 2022).

[6]     Ruttanamongkongul argues that "[a]n ongoing and current outbreak and numerous…unvaccinated staff[] and inmates at Ruttanamongkongul's facility . . . contributes to extraordinary and compelling reasons for sentence reduction . . . ." (Motion at 20.)

Reply at 3-5.)  She objects to the conditions of her confinement and argues that release is appropriate because the Court could not have reasonably foreseen the impact of the COVID-19 pandemic at the time of her sentencing.  (Motion at 1, 45; Reply at 4.) Ruttanamongkongul does not cite any specific health condition that makes her susceptible to severe illness from COVID-19;[7] however, Ruttanamongkongul states that she contracted the virus in January 2022 and now suffers from long-COVID symptoms including anxiety and sensitivities related to sound and smell.[8]  (Reply at 5.) Ruttanamongkongul asserts that "she is scared how/if she will recover next time she contracts [COVID-19]."[9]  (*Id.*)  Ruttanamongkongul further contends that release is appropriate because she does not pose a danger to the community and the sentencing factors set forth in 18 U.S.C. § 3553(a) favor release.  (Motion at 38-43; Reply at 6-9; *see also* Pics. and Letters of Support.)

---

[7]     While Ruttanamongkongul states that she suffers from allergies and sinus problems, she does not appear to claim that these conditions increase her susceptibility to severe illness from COVID-19.  (*See* Motion at 12.)  Even if she were to rely on these conditions as a basis for release, the Court notes that the Centers for Disease and Control does not recognize allergies or sinus problems as risk factors for severe illness from COVID-19.  *See* Centers for Disease Control and Prevention, People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 21, 2021).

[8]     Ruttanamongkongul received a first dose of the COVID-19 Pfizer-BioNTech vaccination on May 26, 2021 and a second dose on June 17, 2021.

[9]     Ruttanamongkongul also expresses concern over the well-being of her family members who are at high risk of contracting severe illness from COVID-19.  (Motion at 20.)  Ruttanamongkongul further asserts that she has been discriminated against and wrongly blamed for the pandemic because she is Asian.  (*Id.* at 20.)

# DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.  U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[10]

Family circumstances considered "extraordinary and compelling" include:  (1) the death or incapacitation of the caregiver of the defendant's minor child or minor children; and (2) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.  *Id.*, cmt. n.1((C).

---

[10]    While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant.  *See, e.g.*, *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker,* 976 F.3d 228, 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098, 1110-11 (6th Cir. 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. 2020).  The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise greater discretion, the Court would still find that Ruttanamongkongul fails to present an extraordinary and compelling reason to warrant release.

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement."  Statement.  The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A).  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.  *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[11]  *Id.*

The record reflects that Ruttanamongkongul submitted a request to the warden at her facility for release from confinement on September 26, 2021.  (Doc. No. 2232-1 ("Request").)  Because more than 30 days have passed without a response to Ruttanamongkongul's Request, the Court finds that her Motion is properly before it.

---

[11]     Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

After a careful review of Ruttanamongkongul claims, though, the Court finds that Ruttanamongkongul's circumstances are insufficiently extraordinary and compelling to meet the demanding standard necessary for compassionate release.  While the Court recognizes Ruttanamongkongul's concern that she is at increased risk of contracting COVID-19 in a prison setting, the Court finds that her generalized fear of reinfection is an insufficiently extraordinary and compelling reason to warrant release.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at \*2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection).

Fortunately, Ruttanamongkongul appears to be in good health without any condition that makes her susceptible to severe illness from COVID-19.  The Court therefore cannot conclude that she suffers from any condition, alone or in combination with the COVID-19 pandemic that has diminished or will diminish her ability to provide self-care while in prison.  The Court also notes that there is just 1 active case of COVID-19 among the inmates and staff at Aliceville FCI Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 21, 2022).  Further, the facility continues to employ measures to mitigate the spread of

COVID-19. [12]  Federal Bureau of Prisons, <u>BOP COVID-19 Operational Levels</u>,

*https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp* (last visited

March 21, 2022).  It is also promising that the BOP has successfully administered over

307,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it,

including more than 90% of the inmates at the Aliceville FCI.  Federal Bureau of Prisons,

<u>COVID-19: Coronavirus</u>, *https://www.bop.gov/coronavirus/* (last visited

March 21, 2022).  Importantly, the Pfizer-BioNTech vaccine that Ruttanamongkongul

received is safe and highly effective, preventing 95% of infections in clinical trials.  *See*

Centers for Disease Control and Prevention, <u>Pfizer-BioNTech COVID-19 Vaccine (also</u>

<u>known as COMIRNATY) Overview and Safety</u>, *https://www.cdc.gov/coronavirus/2019-*

*ncov/vaccines/different-vaccines/Pfizer-BioNTech.html* (last visited March 21, 2022).

Sadly, despite high levels of vaccination in prison settings and ongoing mitigation

---

[12]     Effective March 13, 2020, the BOP required all of its facilities to implement a set
of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective
operation of the federal prison system."  *See* Federal Bureau of Prisons, <u>BOP COVID-19</u>
<u>Action Plan</u>, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited
March 21, 2022).  At Aliceville FCI, because it is at a Level 3 institutional operational
level, these measures include facial coverings for inmates and staff regardless of
vaccination status, social distancing in all areas, and required health checks before
entering the facility.  Federal Bureau of Prisons, <u>BOP COVID-19 Operational Levels</u>,
*https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp* (last visited
March 21, 2022).  Other mitigation steps include limiting visits and internal movement,
increased hygiene measures, screening of both staff and inmates and virtual legal visits.
*Id.*

     The BOP is also exercising greater authority to designate inmates for home
confinement.  Federal Bureau of Prisons, <u>COVID-19: Coronavirus</u>,
*https://www.bop.gov/coronavirus/* (last visited March 21, 2022).  Since March 2020, the
BOP has transferred nearly 39,600 inmates to home confinement.  *Id.*

strategies, some level of continued spread remains a possibility. Despite the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

In short, while the Court recognizes Ruttanamongkongul's concern over becoming reinfected with COVID-19, the Court finds that her concern is largely speculative and that Ruttanamongkongul's risk of severe illness is largely mitigated by the fact that she is 38 years old, fully vaccinated, in good health, has previously recovered from the virus, and because Aliceville FCI continues to employ steps to halt the spread of COVID-19. The Court does not downplay the hardship that COVID-19 restrictions have imposed on Ruttanamongkongul's term of imprisonment; however, the Court cannot conclude that the pandemic alone is a sufficiently extraordinary or compelling reason to warrant release.[13] To conclude otherwise would imply that every inmate incarcerated during the pandemic should be released and contradict the individualized and very specific inquiry that section 3582(c)(1)(A) requires.

Moreover, while the Court commends Ruttanamongkongul for her concern over the well-being of her family members, care or concern for aging or ill relatives is not a basis for release under the Statement. *See* Statement, cmt. n.1((C); *see also United States v. Ingram*, Cr. No. 2:14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not

---

[13]     The Court acknowledges and condemns the wrongful discrimination that Ruttanamongkongul has experienced as a result of the pandemic. Notwithstanding, the Court finds that others' unkindness does not reach the high bar necessary to trigger compassionate release.

extraordinary."); *United States v. Henry*, Cr. No. 13-91, 2020 WL 3791849, at *4

(E.D.N.Y. July 6, 2020) ("Care of parents is not a qualifying basis for release."); *United*

*States v. Goldberg*, Cr. No. 12-180, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020)

(desire to help care for elderly parents is admirable but does not qualify as an

extraordinary and compelling reason under the Statement).

Finally, even if the Court were to find that Ruttanamongkongul's circumstances

were sufficiently extraordinary and compelling to warrant compassionate release, the

Court finds that nearly a 60% reduction in sentence would not reflect the seriousness of

Ruttanamongkongul's conviction, promote respect for the law, or provide a just

punishment.  The Court recognizes that Ruttanamongkongul contests her sentence and

conviction; however, as stated above, those argument are not appropriate here.  As it

stands, a jury convicted Ruttanamongkongul, and the Court imposed a sentence that it

finds improper to reduce at this time.  Therefore, the Court respectfully denies

Ruttanamongkongul's  Motion.[14]

## CONCLUSION

For the reasons set forth above, the Court finds that Ruttanamongkongul's

circumstances are insufficiently extraordinary and compelling to meet the demanding

standard necessary for compassionate release.  The Court also finds that such a

---

[14]    While the Court cannot conclude that a reduction in sentence is appropriate at this time, the Court commends Ruttanamongkongul for her commitment to rehabilitation.  It is clear that Ruttanamongkongul has a number of people that care about and believe in her.  (*See* Pics. and Letters of Support.)  The Court encourages her to maintain her efforts so that she may continue to make a positive impact on those around her and to prepare for a successful release when it is appropriate.

significant sentence reduction would not reflect the seriousness of Ruttanamongkongul's conviction, promote respect for the law, or provide a just punishment.  The Court recognizes Ruttanamongkongul's strong desire to be released, particularly in light of the hardship imposed by COVID-19 restrictions; however, the Court simply cannot conclude that release is appropriate at this time.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Thoucharin Ruttanamongkongul's *pro se* Motion for Compassionate Release (Doc. No. [2199]) is respectfully **DENIED**.

Date:  March 22, 2022                                s/Donovan W. Frank_____
                                                                DONOVAN W. FRANK
                                                                United States District Judge

11